

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-15-00221-CV

**IN THE INTEREST OF L.L.W.**, S.Y.W. and L.D.L., Children

From the 408th Judicial District Court, Bexar County, Texas
Trial Court No. 2014-PA-01142
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:     Marialyn Barnard, Justice

Sitting:        Marialyn Barnard, Justice
                Patricia O. Alvarez, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed: July 15, 2015

AFFIRMED

Appellant mother ("Mother") appeals from a trial court's order terminating her parental rights. The Texas Department of Family and Protective Services ("the Department") moved to terminate Mother's parental rights on numerous grounds. *See* TEX. FAM. CODE ANN. §§ 161.001(A)–(G), (I)–(K), (N)–(R), 161.003 (West 2014). After a hearing, the trial court found Mother's parental rights should be terminated because she: (1) knowingly placed or knowingly allowed children to remain in conditions or surroundings which endangered their physical or emotional well-being; (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the physical or emotional well-being of the children; and (3) failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of her children. *See id.* §§ 161.001(1)(D), (E), (O). The trial

court further found termination would be in the best interests of the children pursuant to section 161.001(2). *Id.* § 161.001(2). On appeal, Mother contends the evidence is legally and factually insufficient to support the trial court's finding that termination was in the children's best interests. We affirm the trial court's order of termination.

## BACKGROUND

The record shows that L.L.W., S.Y.W., and L.D.L. were removed by the Department in May 2014 when Mother overdosed on heroin. The children were found by EMTs with their unconscious mother. The children were immediately removed and placed in foster care where they remain.

After the children were removed, service plans were created for the parents, and the required statutory hearings were conducted. Eventually, the Department sought to terminate Mother's parental rights.[1] After the termination hearing, the trial court rendered an order terminating Mother's parental rights, finding she had violated three provisions of section 161.001(1), as set forth above, and that termination was in the children's best interests. Thereafter, Mother perfected this appeal.

## ANALYSIS

On appeal, Mother does not contest the trial court's findings under section 161.001(1) of the Texas Family Code. Rather, she raises a single issue, contending the evidence is legally and factually insufficient to support the trial court's finding that termination was in L.L.W.'s, S.Y.W.'s, and L.D.L.'s best interests.

---

[1] The Department also sought to terminate the parental rights of each father of the three children — each child has a different father. The trial court also terminated the fathers' parental rights. These terminations are not before this court as none of the fathers appealed.

### *Standard of Review*

Under the Texas Family Code, a court has the authority to terminate a parent's rights to her children only upon proof by clear and convincing evidence that termination is in the best interest of the children. *Id.* § 161.001(2); *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009); *In re E.A.G.*, 373 S.W.3d 129, 140 (Tex. App—San Antonio, 2012, pet. denied). "Clear and convincing evidence" is defined as "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007; *see J.O.A.*, 283 S.W.3d at 344; *E.A.G.*, 373 S.W.3d at 140. This heightened standard of review is required because termination of a parent's rights to her child results in permanent and unalterable changes for parent and child, implicating due process. *E.A.G.*, 373 S.W.3d at 140. Therefore, when reviewing a trial court's termination order, we must determine whether the evidence is such that a fact finder could reasonably form a firm belief that the termination was in the best interest of the child. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)).

With regard to legal sufficiency challenges in termination of parental rights cases, we view the evidence in the light most favorable to the trial court's finding and judgment, and any disputed facts are resolved in favor of that court's findings, if a reasonable fact finder could have so resolved them. *Id.* We are required to disregard all evidence that a reasonable fact finder could have disbelieved, and we must consider undisputed evidence even if such evidence is contrary to the trial court's findings. *Id.* In summary, we consider evidence favorable to termination if a reasonable fact finder could, and we disregard contrary evidence unless a reasonable fact finder could not. *Id.*

We remain mindful that we may not weigh a witness's credibility because it depends on appearance and demeanor, and these are within the domain of the trier of fact. *Id.* Even when

such issues are found in the appellate record, we must defer to the fact finder's reasonable resolutions. *Id.*

In a factual sufficiency review, we also give due deference to the trier of facts' findings, avoiding substituting our judgment for the fact finder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction [in the truth of its finding], then the evidence is factually insufficient." *Id.* (quoting *J.F.C.*, 96 S.W.3d at 266).

### *Application*

Mother argues the evidence is legally and factually insufficient to support the trial court's finding that termination of her relationship with her children was in their best interests. Courts indulge in the strong presumption that maintaining the parent–child relationship is in a child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). We also presume, however, that permanently placing a child in a safe place in a timely manner is in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a). In determining whether a parent is willing and able to provide the child with a safe environment, the court should consider the factors set out in section 263.307(b), which include: (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the Department or other agency; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance

abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child. *Id.* § 263.307(b); *see In re A.S.*, No. 04–14–00505–CV, 2014 WL 5839256, at *2 (Tex. App.—San Antonio Nov. 12, 2014, pet. denied) (mem. op.).

Courts may also take into account the factors set forth by the Texas Supreme Court in *Holley v. Adams*: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent–child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. 544 S.W.2d 367, 371–72 (Tex. 1976). These considerations, i.e., "the *Holley* factors," are neither all-encompassing nor does a court have to find evidence of each factor before terminating the parent–child relationship. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). Thus, lack of evidence as to some of the *Holley* factors does not preclude a trier of fact from reasonably forming a strong conviction or belief that termination is in a child's best interest. *Id.*

Additionally, although proof of acts or omissions under section 161.001(1) of the Texas Family Code does not relieve the Department from proving the best interest of the child, the same

evidence may be probative of both issues. *Id.* at 28 (citing *Holley*, 544 S.W.2d at 370); *Wiley v. Spratlan*, 543 S.W.2d 349, 351 (Tex. 1976). Moreover, in conducting a best interest analysis, a court may consider circumstantial evidence, subjective factors, and the totality of the evidence, in addition to direct evidence. *A.S.*, 2014 WL 5839256, at *2 (citing *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied)). Finally, a fact finder may judge a parent's future conduct by her past conduct in determining whether termination of the parent–child relationship is in the best interest of the child. *Id.*

As Mother points out in her brief, there was limited evidence presented at the hearing on either the statutory or *Holley* factors. In fact, the Department called only one witness, Dianna Pollan, the caseworker. However, as stated above, a court need not find evidence of each *Holley* factor before terminating the parent–child relationship. *See C.H.*, 89 S.W.3d at 27. And, just because there is an absence of evidence as to one or more of the *Holley* factors, a court is not prohibited from reasonably forming a strong conviction or belief that termination is in a child's best interest. *Id.* In this case, despite a lack of evidence as to all of the *Holley* or section 263.307(b) factors, we hold the evidence that does exist is legally and factually sufficient to support the trial court's finding that it was in the children's best interests to terminate Mother's parental rights.

According to Ms. Pollan, the children are currently six, four, and thirteen months of age. *See* TEX. FAM. CODE ANN. § 263.306(b)(1) (child's age and physical and mental vulnerabilities); *Holley*, 544 S.W.2d at 371–72. L.L.W. and S.Y.W. have special needs and are being seen by occupational therapists. *See* TEX. FAM. CODE ANN. § 263.306(b)(1); *Holley*, 544 S.W.2d at 371–72. S.Y.W. also has a referral to an ENT, an ear-nose-throat physician. *See* TEX. FAM. CODE ANN. § 263.306(b)(1); *Holley*, 544 S.W.2d at 371–72. L.D.L. is being monitored for asthma. *See* TEX. FAM. CODE ANN. § 263.306(b)(1); *Holley*, 544 S.W.2d at 371–72. No evidence was presented as to the desires of the children with regard to conservatorship. *See Holley*, 544 S.W.2d at 371–72.

However, two of the children were too young to express such desires, but there was no evidence even as to the six-year-old, who might have been capable of expressing an opinion.

The Department case worker testified the children were removed from Mother's care in May 2014, when Mother overdosed on heroin. *See* TEX. FAM. CODE ANN. § 263.306(b)(8) (history of substance abuse by child's family or others with access to child's home); *Holley*, 544 S.W.2d at 371–72. EMTs, who had been called to the home because of the overdose, found the children with their unconscious mother; the children were dirty and hungry. *See* TEX. FAM. CODE ANN. § 263.306(b)(3) (magnitude, frequency, and circumstances of harm to child); *id.* § 263.306(b)(12) (whether child's family demonstrates adequate parenting skills); *Holley*, 544 S.W.2d at 371–72.

According to Ms. Pollan, Mother has a lengthy criminal history, dating back many years, that demonstrates she has endangered the welfare of her children. *See* TEX. FAM. CODE ANN. § 263.306(b)(8); *id.* § 263.306(b)(12); *Holley*, 544 S.W.2d at 371–72. First, Mother has a history of drug abuse. *See* TEX. FAM. CODE ANN. § 263.306(b)(8); *id.* § 263.306(b)(12); *Holley*, 544 S.W.2d at 371–72. As noted above, she overdosed on heroin with her children in the home. *See* TEX. FAM. CODE ANN. § 263.306(b)(8); *id.* § 263.306(b)(12); *Holley*, 544 S.W.2d at 371–72. When Mother overdosed, several prescription bottles were found strewn about the house. *See* TEX. FAM. CODE ANN. § 263.306(b)(8); *id.* § 263.306(b)(12); *Holley*, 544 S.W.2d at 371–72. Second, Ms. Pollan testified Mother had "at least one family assault charge," and there is evidence of domestic violence between Mother and two of the three fathers. *See* TEX. FAM. CODE ANN. § 263.306(b)(7) (history of abusive or assaultive conduct by child's family or others with access to child's home); *id.* § 263.306(b)(12); *Holley*, 544 S.W.2d at 371–72. Ms. Pollan testified she has concerns that Mother "continues to be involved with men who are abusive." *See* TEX. FAM. CODE ANN. § 263.306(b)(7); *id.* § 263.306(b)(12); *Holley*, 544 S.W.2d at 371–72. However, Mother testified she was not in any relationship at the time of the hearing and had no plans to enter

a relationship in the future. Third, even after the Department intervened and removed the children, Mother engaged in new criminal activity. *See* TEX. FAM. CODE ANN. § 263.306(b)(7); *id.* § 263.306(b)(12); *Holley*, 544 S.W.2d at 371–72. Specifically, Mother obstructed the arrest of the father of one of the children, who was assaulting her great-grandmother. *See* TEX. FAM. CODE ANN. § 263.306(b)(7); *id.* § 263.306(b)(12); *Holley*, 544 S.W.2d at 371–72. Ms. Pollan testified that she had no confidence the Mother would refrain from future criminal activities if the children were returned to her, resulting in continued danger to the children.

As to her service plan, which set out the tasks and goals Mother needed to complete to obtain the return of her children, the evidence showed Mother failed to complete several tasks, not the least of which was failing one drug test and missing another, claiming she was out of town. *See* TEX. FAM. CODE ANN. § 263.306(b)(10) (willingness and ability of child's family to seek out, accept, and complete counseling services); *id.* § 263.306(b)(11) (willingness and ability of child's family to effect positive environmental and personal changes within reasonable time period); *Holley*, 544 S.W.2d at 371–72. According to Ms. Pollan, Mother was uncooperative with regard to the mandated drug testing and Mother failed to address her drug-related issues. *See* TEX. FAM. CODE ANN. § 263.306(b)(10); *id.* § 263.306(b)(11); *Holley*, 544 S.W.2d at 371–72.

Mother was also required to engage in counseling. *See* TEX. FAM. CODE ANN. § 263.306(b)(10); *id.* § 263.306(b)(11); *Holley*, 544 S.W.2d at 371–72. Ms. Pollan testified Mother was only "semi-engaged" in counseling, missing about half of her recent appointments. Mother stated she wanted to keep working with her therapist toward the goal of reunification with her children. *See* TEX. FAM. CODE ANN. § 263.306(b)(10); *id.* § 263.306(b)(11); *Holley*, 544 S.W.2d at 371–72.

Mother completed her parenting classes and faithfully exercised her rights to visitation as set out in the service plan, seeing her children every week. *See* TEX. FAM. CODE ANN.

§ 263.306(b)(10); *id.* § 263.306(b)(11); *Holley*, 544 S.W.2d at 371–72. During visitations, Ms. Pollan saw Mother using skills she learned in parenting classes when interacting with her children. *See* TEX. FAM. CODE ANN. § 263.306(b)(10); *id.* § 263.306(b)(11); *Holley*, 544 S.W.2d at 371–72. She appeared bonded with her children and seemed to have a good relationship with them. Mother also participated in all three of the mandated family group conferences. *See* TEX. FAM. CODE ANN. § 263.306(b)(10); *id.* § 263.306(b)(11); *Holley*, 544 S.W.2d at 371–72.

Despite the completion of the parenting class and implementation of the information learned therein, as well as Mother's bond with the children, Ms. Pollan concluded termination was in the children's best interests because Mother had significant time to address her numerous issues, but made no significant progress in many areas, especially with regard to her drug use and abusive relationships. *See* TEX. FAM. CODE ANN. § 263.306(b)(10); *id.* § 263.306(b)(11); *Holley*, 544 S.W.2d at 371–72.

As for the current and future placement of the children, the children remained in foster care as of the date of the hearing and their needs are being met. *See Holley*, 544 S.W.2d at 371–72. According to Ms. Pollan, the Department's long-range plan for the children — in the event of termination — is adoption. *Id.* The Department has contacted relatives who may be willing to adopt; if not, the Department will seek adoption by non-relatives. *Id.* Mother testified there might be relatives who would take the children, but she would "have to talk to them." *See* TEX. FAM. CODE ANN. § 263.306(b) (13) (adequate social support system in nature of extended family and friends); *Holley*, 544 S.W.2d at 371–72.

Finally, the evidence establishes, and Mother does not contest, she committed several acts or omissions under section 161.001(1). *See C.H.*, 89 S.W.3d at 28. Specifically, Mother: (1) knowingly placed or knowingly allowed children to remain in conditions or surroundings which endangered their physical or emotional well-being; (2) engaged in conduct or knowingly placed

the children with persons who engaged in conduct which endangered the physical or emotional well-being of the children; and (3) failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of her children. *See* TEX. FAM. CODE ANN. §§ 161.001(1) (D), (E), (O).

Given that the trial court was permitted to consider circumstantial evidence, subjective factors, and the totality of the evidence, in addition to the direct evidence presented, we hold the trial court was within its discretion in finding termination of Mother's parental rights would be in her children's best interests. *See A.S.*, 2014 WL 5839256, at \*2. In other words, we hold the evidence is such that the trial court could have reasonably formed a firm belief or conviction that termination was in the children's best interests. *See J.P.B.*, 180 S.W.3d at 573.

## CONCLUSION

We hold the trial court did not err in finding that termination of the Mother's parental rights was in the children's best interests. There was both legally and factually sufficient evidence to support the trial court's finding. Accordingly, we overrule Mother's sole appellate issue and affirm the trial court's order of termination.

Marialyn Barnard, Justice